T.C. Memo. 2020-53

UNITED STATES TAX COURT

CHRISTOPHER LAMBERT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10134-18L.                    Filed May 6, 2020.

Christopher Lambert, pro se.

<u>Derek W. Kelley</u> and <u>Michael E. D'Anello</u>, for respondent.

MEMORANDUM OPINION

NEGA, <u>Judge</u>:  Petitioner seeks review pursuant to sections 6320(c) and

6330(d)[1] of respondent's determination in an agency-level collection due process

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect at all relevant times, and all Rule references are to
the Tax Court Rules of Practice and Procedure.  All monetary amounts are

(continued...)

[*2] (CDP) proceeding to sustain the filing of a notice of Federal tax lien (NFTL) in an action to collect section 6672 trust fund recovery penalties (TFRPs) assessed against petitioner for failing to collect and pay over employment taxes of CJB Concrete Forms, Inc., for the quarterly periods September 2004 through December 2006 (periods at issue). Respondent has moved for summary judgment under Rule 121, and petitioner has not filed any response to respondent's motion. For the reasons explained below, we will grant the motion.

## Background

The following facts are based on the pleadings and the administrative record.[2]

### CJB Concrete Forms, Inc.

Petitioner was the vice president and secretary of CJB Concrete Forms, Inc., a business located in Massachusetts that operated during the periods at issue. As a result of its operations, CJB Concrete Forms, Inc., incurred the obligation to pay Federal employment or excise taxes. Petitioner had the duty to perform and the

---

[1](...continued)
rounded to the nearest dollar.

[2]Respondent has filed exhibits to his motion for summary judgment and a separate declaration of the settlement officer (SO) with attached exhibits. These exhibits constitute the administrative record.

[*3] power to direct the acts of collection, accounting for and paying over trust fund monies of CJB Concrete Forms, Inc.; however, the required funds were not withheld or paid over to the Internal Revenue Service (IRS) for the periods at issue.

The trust fund recovery penalties

On December 15, 2010, a revenue officer prepared Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment, that was signed that same day by the group manager, the revenue officer's immediate supervisor. The TFRPs approved on the Form 4183 were assessed for the quarterly periods from March 2004 through December 2008 and totaled $85,752. Two responsible parties were listed on the Form 4183: petitioner and the president of CJB Concrete Forms, Inc.

On December 16, 2010, the IRS sent petitioner Letter 1153, Trust Fund Recovery Penalty Letter, indicating its proposal to assess the TFRPs and enclosing Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, that set forth the amounts of outstanding employment taxes that should have been withheld or excise taxes that should have been paid (trust fund taxes), as well as the TFRPs proposed to be assessed in respect of each quarter corresponding with the unpaid trust fund taxes. Petitioner filed a timely written protest of his liability for the

**[\*4]** TFRPs.  After he was afforded a conference with the IRS Appeals Office[3] that did not result in settlement, the IRS assessed the TFRPs that are the basis of this CDP case on July 4, 2011.

Notice of Federal tax lien

On November 28, 2017, respondent issued by letter to petitioner a notice of NFTL filing for each TFRP assessed for the periods at issue, for a total unpaid balance of $51,849.[4]  Each notice of NFTL filing informed him of his right to a CDP hearing under section 6320.  Petitioner timely requested a CDP hearing for the periods at issue on Form 12153, Request for a Collection Due Process or Equivalent Hearing.  When prompted to "[c]heck the most appropriate box for the reason you disagree with the filing of the lien or the levy", petitioner did not select a check-the-box option but instead wrote "[r]easonable expenses exceeding my income" and "[s]ome of these taxes should have been paid by former partner".  Petitioner checked the boxes for the following collection alternatives:

---

[3]This office is now called the "Independent Office of Appeals".  See sec. 6320(b)(1) (as amended by the Taxpayer First Act, Pub. L. No. 116-25, sec. 1001, 133 Stat. at 983) (2019).

[4]Respondent asserts that IRS records show the TFRPs were reduced on account of payments made for some of the periods at issue by petitioner's former partner under the terms of an offer-in-compromise.

**[*5]** "Installment Agreement", "Offer in Compromise", and "I Cannot Pay Balance". With respect to collection alternatives the Form 12153 instructed:

> If, during your CDP Hearing, you think you would like to discuss a Collection Alternative to the action proposed by the Collection function it is recommended you submit a completed Form 433A (Individual) and/or Form 433B (Business), as appropriate, with this form. * * *

Petitioner did not include a Form 433A, Collection Information Statement for Wage Earners and Self-Employed Individuals (or 433B, Collection Information Statement for Business), with his request for a CDP hearing.

On January 30, 2018, the IRS acknowledged petitioner's request in a letter that specifically stated: "[B]efore we can consider your request for a collection alternative, we need additional information. Please complete the enclosed Form 433-F". This letter indicated that the IRS had not received a completed Form 656, Offer in Compromise, and it requested its completion for consideration of an offer-in-compromise. On February 20, 2018, an SO from the IRS Appeals Office sent petitioner a letter scheduling a telephone CDP conference for March 13, 2018, for the express purpose of discussing petitioner's "disagree[ment] with the collection action or * * * alternatives to the collection action". The SO informed petitioner that

[*6] to consider alternative collection methods such as an installment agreement or offer in compromise, you must provide * * * [a] Completed Collection Information Statement Form 433-A for individuals * * * <u>I can't consider collection alternatives without the information requested</u>. I am enclosing the necessary forms and a return envelope for your convenience. [Emphasis added.]

The administrative record reveals that on the same day the SO sent this letter he reviewed IRS records and determined, among other things, that petitioner had previously appealed the IRS' determination to assess TFRPs to the IRS Appeals Office, which had upheld the determination. The SO also spent significant time reviewing IRS records to determine that the requirements of applicable law and administrative procedure had been met for the administrative steps taken in petitioner's case.

On the date and time scheduled for petitioner's telephone CDP conference the SO placed a telephone call to him but received no answer and had no opportunity to leave a message. Although the SO's original letter to petitioner provided the SO's name, employee ID, telephone number, and fax number, petitioner did not contact the SO for the telephone conference. The SO sent petitioner a letter on the day of the scheduled telephone CDP conference briefly reciting his attempts to contact petitioner for a "telephone Collection Due Process conference" and indicated that petitioner had an additional 14 days to provide any

**[\*7]** additional information to the SO, including any information requested in previous correspondence, and that after such time elapsed the Appeals Office would "make a determination in the hearing you requested by reviewing the Collection administrative file and whatever information you provided". Petitioner did not respond or provide any of the requested information.

On May 9, 2018, respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 finding that the NFTL was appropriate and enclosing a summary of the actions taken during the CDP proceeding and the determination by the SO to sustain the lien action. The summary recited the SO's attempts to contact petitioner, the fact that no Form 433-A was received, and the SO's independent review of the IRS' collection actions. The SO concluded that "the IRS followed all legal and procedural requirements, and the actions taken or proposed were appropriate under the circumstances."

Tax Court proceedings

Petitioner timely filed his petition in this Court arguing that: (1) he was not provided a hearing to discuss his proposed collection alternatives; (2) payment of the tax would be a financial hardship on his family; (3) the statute of limitations provided him a defense; (4) his former partner is responsible for the tax and settled

**[\*8]** with the IRS; and (5) he provided the requested information timely. Petitioner resided in Rhode Island when the petition was filed.

Respondent has filed a motion for summary judgment and documents in support thereof, arguing that petitioner is precluded from challenging the TFRP assessment and that the determination of the SO sustaining the NFTL should be upheld. Twice petitioner was ordered to respond to respondent's motion; no response has been filed, and the periods set for any response have lapsed. At the calendar call corresponding with the trial date originally set in this case, petitioner stated: "I have no defenses to the motion."

Discussion

I.     Summary judgment

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we draw factual inferences in the light most favorable to the nonmoving party, Sundstrand Corp. v. Commissioner, 98 T.C. at 520--in this instance, petitioner. However, petitioner

**[*9]** "may not rest upon the mere allegations or denials" but rather "must set forth specific facts showing that there is a genuine dispute for trial." See Rule 121(d). If appropriate, a decision may be entered against a party who fails to respond to a motion for summary judgment. Id. Although petitioner has failed to respond to respondent's motion for summary judgment, we do not enter a decision on that basis alone but instead consider respondent's motion on its merits and conclude that no material facts are in genuine dispute and that this case is appropriate for summary adjudication.

## II. CDP procedure: standard and scope of review

Section 6321 imposes a lien in favor of the United States arising by operation of law on all property and rights to property of a taxpayer where the taxpayer neglects or refuses to pay after demand "any tax * * * including any interest, additional amount, addition to tax, or assessable penalty" for which the taxpayer is liable. The lien imposed by section 6321 arises at the time the liability is assessed. Sec. 6322. Under section 6323(a) and (f) the IRS is authorized to file an NFTL (distinct from the lien itself) but must, "not more than 5 business days after the day of the filing", notify the taxpayer of the filing of the NFTL and his right to an administrative hearing before an impartial officer in the Appeals Office--the agency-level CDP hearing. See sec. 6320(a)(2), (b).

**[\*10]** In the agency-level CDP hearing, the SO is required to: first, verify that the requirements of any applicable law or administrative procedure have been met by IRS personnel, see sec. 6330(c)(1), (3)(A); second, consider any relevant issues the taxpayer has properly raised at the hearing that relate to the liability at issue, including the appropriateness of the collection action and offers of collection alternatives, with the caveat that the taxpayer may contest the existence and amount of the underlying liability only if he did not receive a statutory notice of deficiency or otherwise have an opportunity to dispute the liability, see sec. 6330(c)(2), (3)(B); and third, determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary", sec. 6330(c)(2), (3)(C). A taxpayer is "expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing." Sec. 301.6320-1(e)(1), Proced. & Admin. Regs.

If the taxpayer is dissatisfied with the outcome of the CDP hearing, he can appeal that determination to the Tax Court, as petitioner has done. Secs. 6320(c), 6330(d)(1). Where the underlying tax liability is properly at issue, the taxpayer is entitled to de novo review. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

[*11] We review issues that do not relate to the underlying tax liability for abuse of discretion. Id. at 182. Because petitioner had a prior opportunity to dispute his liability for the TFRPs before the IRS Appeals Office, he was not entitled to challenge the underlying liability at the CDP hearing, see sec. 6330(c)(2)(B); we accordingly review the SO's actions only for abuse of discretion. Under this standard we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Absent a stipulation to the contrary, this case would be appealable to the U.S. Court of Appeals for the First Circuit. See sec. 7482(b). We restrict the scope of our review to the administrative record. Murphy v. Commissioner, 469 F.3d at 31; see also Kasper v. Commissioner, 150 T.C. 8, 19 n.13 (2018).

III.   Penalty approval under section 6751(b)

Section 6751(b)(1) requires that the "initial determination" of a penalty be approved in writing by the immediate supervisor of the individual making that determination; the approval must occur before the first time the "proposed adjustments are communicated to the taxpayer formally as part of a communication that advises the taxpayer that penalties will be proposed". Clay v. Commissioner, 152 T.C. 223, 249 (2019), appeal filed (11th Cir. Nov. 6, 2019);

**[\*12]** see also Belair Woods, LLC v. Commissioner, 154 T.C. __, __ (slip op. at 15-16) (Jan. 6, 2020) ("[T]he 'initial determination' of a penalty assessment will be embodied in a formal written communication to the taxpayer, notifying him that the Examination Division has completed its work and has made a definite decision to assert penalties.").

In Chadwick v. Commissioner, 154 T.C. __, __ (slip op. at 11-17) (Jan. 21, 2020), we held that a TFRP assessed pursuant to section 6672(a) is a "penalty" imposed by the Code to which the requirements of section 6751(b)(1) are applicable. The Form 4183 in the administrative record shows that the immediate supervisor of the revenue officer in this case approved the TFRPs on December 15, 2010, one day before the Letter 1153--the first formal communication of the IRS' initial determination to assess the TFRPs--was mailed to petitioner. The Form 4183 here is uncontroverted evidence of timely written supervisory approval; it is sufficient to show compliance with section 6751(b). Accord Blackburn v. Commissioner, 150 T.C. 218, 224 n.4 (2018); see Chadwick v. Commissioner, 154 T.C. at __ (slip op. at 17-18). Accordingly, we find no abuse of discretion in the SO's implicit determination that the requirements of applicable law were met in this regard.

[*13] IV.    Analysis of CDP proceedings

The facts set forth in the administrative record show that the SO complied with his statutory duties:  He verified that the requirements of applicable law and administrative procedure had been met, considered the issues raised by petitioner to the extent of the information provided, and properly weighed the proposed collection action, balancing the need for the efficient collection of taxes against petitioner's legitimate concern that any collection action be no more intrusive than necessary.  Petitioner contests that he was provided a hearing, but the record shows that he was afforded an adequate opportunity to raise issues with the SO regarding the TFRP collection action.  Sec. 301.6320-1(d)(2), A-D6, Proced. & Admin. Regs.; see, e.g., Leibold v. Commissioner, T.C. Memo. 2012-210, slip op. at 14 (holding that IRS acted within its discretion to proceed with NFTL without face-to-face pre-collection hearing where all applicable law and administrative procedure was followed and taxpayer failed to offer any collection alternatives, raise permitted nonliability issue, or provide financial information requested by IRS); Peter D. Dahlin Attorney at Law, P.S. v. Commissioner, T.C. Memo. 2007-310, slip op. at 9 ("[O]nce a taxpayer has been given a reasonable opportunity for a hearing but has failed to avail himself of that opportunity, then the

**[\*14]** Commissioner may make a determination to proceed with collection based upon a review of the case file.").

Petitioner also raised a statute of limitations issue in his petition. The TFRP assessments all occurred on July 4, 2011, well within the 10-year period of limitations on collection after assessment under section 6502.[5] We have acknowledged that our precedent contains some ambiguity as to whether the expiration of the period of limitations on collection is properly considered a challenge to the underlying tax liability (and therefore subject to de novo review). See Weiss v. Commissioner, 147 T.C. 179, 187 (2016), aff'd, 2018 WL 2759389 (D.C. Cir. May 22, 2018). While petitioner had the opportunity to challenge the underlying TFRP liabilities before assessment, he has not had a prior opportunity to raise a challenge based on the 10-year period of limitations on collection in a collection proceeding. See, e.g., Jordan v. Commissioner, 134 T.C. 1, 8 (2010) (concluding that de novo review would apply in such a circumstance), supplemented by T.C. Memo. 2011-243. But we conclude that the result in this

---

[5]We construe petitioner's challenge to the period of limitations as relating to the statute of limitations applicable to collection, see sec. 6502, rather than assessment, see sec. 6501. However, we observe that the SO verified that the IRS had complied with the period of limitations on assessment of the liability. See secs. 6201(a), 6501(a), 6672(b); Dinino v. Commissioner, T.C. Memo. 2009-284, slip op. at 18.

[*15] case would be the same under either standard of review, as the uncontroverted facts in the administrative record show that the period of limitations on collection after assessment had not expired upon the filing of the NFTL. See Weiss v. Commissioner, 147 T.C. at 187. Therefore petitioner cannot prevail on this basis.

Petitioner also asserted as a potential ground for relief that his former partner at CJB Concrete Forms, Inc., is responsible for the taxes and settled with the IRS. But before the assessment of the TFRPs at issue here, petitioner received a Letter 1153 and fully availed himself of the opportunity to contest the assessment of the liability for the TFRPs in a prior CDP hearing. This action constituted a prior opportunity to dispute that liability which now precludes us from entertaining this claim. See Pough v. Commissioner, 135 T.C. 344, 349 (2010).[6]

Petitioner also raised the issue that payment of the tax would work a financial hardship on his family, but he provided none of the information

---

[6]We note that sec. 6672 allows the IRS to seek collection simultaneously from multiple responsible persons until such time as the outstanding liabilities are satisfied in full; a responsible person cannot avoid collection on the ground that the IRS should first collect the tax from someone else. See Bletsas v. Commissioner, T.C. Memo. 2018-128, at *11-*12, aff'd, 784 F. App'x 835 (2d Cir. 2019).

**[\*16]** necessary for the SO to consider payment alternatives. Petitioner's assertion that he provided the information that the IRS requested in a timely manner is simply not supported by the record. Although petitioner requested a collection alternative, contrary to the assertions in his petition we find that he did not provide any of the financial information requested by the SO despite continued prompts for the information over the course of months of correspondence, nor did he participate in the telephone conference that he was notified would provide him the opportunity to discuss those matters. Even after the SO attempted to hold the telephone conference, the SO sent a letter prompting petitioner again to provide the requested information, but to no avail.

The SO does not abuse his discretion when he rejects a collection alternative because of the taxpayer's failure to provide the necessary financial information during the CDP hearing. Olsen v. United States, 414 F.3d 144, 154 (1st Cir. 2005); Pough v. Commissioner, 135 T.C. at 351. We therefore conclude that there is no genuine dispute of material fact requiring a trial in this case. We hold that respondent is entitled as a matter of law to the entry of a decision sustaining the filing of the NFTL.

**[*17]**  To reflect the foregoing,

        <u>An appropriate order and decision</u>

<u>will be entered</u>.